<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **NANETTE CRUZ,** | |
| Plaintiff, | |
| v. | Civil Action No. 13-6756 (ES) |
| **COMMISSIONER OF SOCIAL SECURITY,** | <u>**OPINION**</u> |
| Defendant. | |

<u>**SALAS, DISTRICT JUDGE**</u>

Before the Court is an appeal filed by Plaintiff Nanette Cruz ("Cruz" or "Plaintiff"). Plaintiff seeks review of the final administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. This Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

**I.     BACKGROUND**

    **A.  Procedural History**

On August 30, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also filed a Title XVI application for SSI on June 10, 2010. In both applications, Plaintiff alleged disability beginning April 19, 2010. (D.E. No. 12, Admistrative Record ("R.") at 9). The Commissioner denied the application

1

on January 26, 2011 (R. at 66-69), and again upon reconsideration on June 14, 2011 (R. at 75-80).

Thereafter, an administrative hearing was held on June 6, 2012 before Administrative Law Judge (ALJ) Barbara Dunn, at which Plaintiff testified.  (R. at 25). Vocational Expert Steven H. Feinstein testified as well.  (R. at 25).  On July 19, 2012, the ALJ issued a decision based on her consideration of the testimony at the hearing and her review of Plaintiff's medical records.  (R. at 9).  The ALJ found that "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 18).  Accordingly, the ALJ concluded that a "finding of 'not disabled' is therefore appropriate." (R. at 18).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  Plaintiff commenced this action on November 6, 2013.  (D.E. No. 1, Compl.).

### B. Medical Records

On November 19, 2008, rheumatologist Dr. Maryann Lee, M.D. wrote a progress letter indicating that Plaintiff's musculoskeletal and joint exams were normal, but that she had "every fibromyalgia tender point." (R. at 385).  She stated that "it is my impression that she does have fibromyalgia." (R. at 386).  On January 26, 2009, after conducting a follow-up visit with Plaintiff, Dr. Lee wrote a progress note indicating that treatment "has improved [Plaintiff's] pain somewhat" though "she still has significant tender points." (R. at 384).

On October 13, 2010, Dr. Lee completed a medical report summarizing her treatment of Plaintiff since the November 19, 2008 appointment. (R. at 210). Specifically, Dr. Lee noted that Plaintiff's medical history includes fibromyalgia and depression. (R. at 210). Dr. Lee further noted that Plaintiff has fibromyalgia tender points and that various treatments have been ineffective. (R. at 210). She stated that Plaintiff reported an inability to lift more than ten pounds or stand or sit for more than two hours a day. (R. at 211). However, Dr. Lee indicated that she could not provide a medical opinion on Plaintiff's ability to engage in work-related activities. (R. at 211).

On September 21, 2010, Dr. Joseph Hederman, M.D. completed a medical report summarizing his treatment of Plaintiff on a monthly basis since June 3, 2004. (R. at 213). Dr. Hederman listed fibromyalgia, hypertension, anxiety, and depression as Plaintiff's diagnoses. (R. at 213). He opined that Plaintiff is limited by her inability to lift more than five pounds, her inability to walk for more than two hours per day, and her inability to sit for more than six hours per day. (R. at 214). He also indicated that she is limited in her abilities to push, pull, and travel. (R. at 214).

On December 4, 2010, Plaintiff was evaluated by Dr. Pradip Gupta, M.D. at Central Jersey Medical. (R. at 222-23). Dr. Gupta reported that Plaintiff provided a "history of chronic total body pain and fibromyalgia and depression and anxiety since the last few years." (R. at 222). He diagnosed Plaintiff with, *inter alia*, depressive disorder, chronic fibromyalgia, pain, and chronic fatigue. (R. at 223). Plaintiff reported an ability to perform light household chores and prepare simple meals. (R. at 223).

On December 15, 2010, Plaintiff was evaluated by Dr. Francky Merlin, M.D. at Central Jersey Medical. (R. at 224-25). Dr. Merlin reported fibromyalgia among

3

Plaintiff's diagnoses. (R. at 226). Dr. Merlin also reported that, during Plaintiff's physical exam, she had "no difficulty getting up from a sitting position or getting on and off the examining table. Grasping strength and manipulative functions are not impaired." (R. at 225). He also noted Plaintiff's ability to walk and her range of motion. (R. at 225). He noted tenderness "over both trapezii and paravertebral thoracic and lumbar regions." (R. at 225).

On August 1, 2011, Plaintiff was treated at the Eric B. Chandler Health Center, where she reported "worsening pain" and "swelling" in her joints. (R. at 298). Upon examination, Plaintiff exhibited tenderness over various joints and decreased range of motion. (R. at 298). Dr. Eric Jahn, M.D. noted diagnoses of fibromyalgia, depression, and hypertension. (R. at 298).

On October 17, 2011, Plaintiff was examined by Dr. Tawana McNair, M.D. (R. at 268). Dr. McNair listed Plaintiff's primary diagnoses as fibromyalgia, chronic pain, anxiety, and fatigue. (R. at 268). Dr. McNair indicated that Plaintiff could not work full-time and could not participate part-time in a work activity. (R. at 269). She further noted that Plaintiff's work limitations include standing, walking, and lifting. (R. at 269).

Plaintiff was treated again at the Eric B. Chandler Health Center on December 2, 2011, January 30, 2012, and March 19, 2012, and reported symptoms consistent with those previously expressed. (R. at 292, 288, 275).

Also on March 19, 2012, Dr. McNair completed a medical source statement, which Dr. Schneiderman co-signed. (R. at 387-92). The statement indicated that Plaintiff is limited by her abilities to lift and carry. (R. at 387). It further indicated that Plaintiff is limited in that she may only sit for 15 minutes, stand for 20 minutes, and walk for 20

minutes at one time without interruption. (R. at 388). The form indicated the same limitations—15 minutes sitting, 20 minutes standing, and 20 minutes walking—also applied to a full eight hour workday. (R. at 388). Yet these assessments were undermined by the additional statement that the remainder of Plaintiff's time is spent resting, *sitting*, and sleeping. (R. at 388). In addition, Drs. McNair and Schneiderman noted a number of limitations in Plaintiff's left and right hands, and wrote that Plaintiff "has decreased range of motion of the extremities and joints, associated with fatigue and pain." (R. at 389). She also has occasional joint swelling in hands." (R. at 389). With respect to daily activities, the statement indicates that Plaintiff can perform activities like shopping, ambulate without certain devices, use transportation, climb a few steps with use of a handrail, prepare meals and feed herself, and care for personal hygiene. (R. at 392). It indicated that she is restricted in that she cannot travel without a companion for assistance, walk on rough or uneven surfaces, or sort, handle, or use paper files. (R. at 392). Finally, the statement indicates that Plaintiff has a number of environmental limitations. (R. at 391).

On March 22, 2012, Plaintiff was treated by Dr. Naomi Schlesinger, M.D. in an initial rheumatology consultation. (R. at 333). Dr. Schlesinger noted that Plaintiff was previously diagnosed with fibromyalgia and had been treated with various medications that Plaintiff reported did not control her pain. (R. at 333). Plaintiff reported constant pain, as well as muscle and body aches, fatigue, and weakness. (R. at 333). Dr. Schlesinger noted multiple fibromyalgia tender points, and diagnosed fibromyalgia, Raynaud's disease, and neck pain. (R. at 337-338).

### C. Hearing Testimony

Plaintiff testified at a hearing before ALJ Dunn on June 6, 2012. (R. at 25). Plaintiff reported that she stopped working in 2010 due to fatigue. (R. at 30). Prior to that, she worked as a teacher's assistant with children ages three to five. (R. at 30-31).

In response to her representative's questioning, Plaintiff testified that she experiences regular pain and fatigue and takes naps during the day. (R. at 35). She testified that she can sit in a chair for about 10 to 15 minutes without moving around, and that she has problems walking up stairs and maintaining balance. (R. at 37-38). She testified that, when walking, she stops approximately every 15 minutes and can walk about two blocks total. (R. at 40). She has trouble carrying a shopping bag with milk and another item, and estimates that she can carry approximately 10 lbs. (R. at 41).

### D.  Expert Testimony

Vocational Expert Steven Feinstein testified that a hypothetical person of Plaintiff's age, education, work experience, and residual functional capacity could perform the occupations of toy assembler, ampule sealer, and addressing clerk. (R. at 52-55).

## II.  LEGAL STANDARD

### A.  Standard of Review

This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c) (3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Substantial evidence is more than a "mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance," *McCrea v.*

6

*Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir.2004), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Five-Step Process for Determining SSI Eligibility

In order to be eligible for SSI under Title XVI of the Social Security Act ("the Act"), a claimant must satisfy two requirements. First, the claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). Second, a claimant seeking SSI must establish that he or she falls within the income and resource limits set forth in §§ 1382a and 1382b.

An individual is deemed disabled under Title II and Title XVI if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A)(SSI). Furthermore, the individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled. . . .
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4)(DIB), 416.920(a)(4)(SSI).

"The claimant bears the ultimate burden of establishing steps one through four." *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). "At step five, the burden of proof shifts to the Social Security Administration." *Id.* If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops. 20 C.F.R. §§ 404.1520(a)(4)(DIB), 416.920(a)(4)(SSI).

During the five-step evaluation process, an ALJ reviews the medical evidence contained in the claimant's record. An ALJ must give controlling weight to and adopt the medical opinion of a treating physician if it "is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Not inconsistent" does not require that the treating physician's opinion "be supported directly by all of the other evidence as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." *Williams v. Barnhart*, 211 F. App'x 101, 103 (3d Cir. 2006). Even where the treating physician's opinion is not required to be given controlling weight, the opinion is not necessarily rejected and may still be entitled to deference "depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the medical evidence of different physicians conflicts, an "ALJ may choose whom to credit but 'cannot reject evidence *for no reason or for the wrong reason.*'" *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000) (emphasis added) (quoting *Plummer*, 186 F.3d at 429). "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (citation omitted).

Once an ALJ has found a "medically determinable impairment(s)," he or she evaluates the "intensity, persistence, and functionally limiting effects of [the] symptoms" to determine their effect on the individual's capacity to do "basic work activities." 20 C.F.R. §§ 404.1529(c), 416.929(c). At this point in the disability determination, an ALJ

9

considers the statements made by the claimant and must make a specific finding as to the individual's credibility. *See Barnhart*, 211 F. App'x at 104–05; *see also* SSR 96–7p ("clarify[ing] *when* the evaluation of symptoms . . . requires a finding about the credibility of an individual's statements" (emphasis added)). In determining such credibility, an ALJ must consider all the relevant evidence in the case record, including medical evidence, statements made by the claimant and third parties regarding the claimant's impairment and its functional effects. *Barnhart,* 211 F. App'x at 104. Finally, although an ALJ's credibility determination is entitled to deference, an ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." *Id.*; *see Reefer v. Barnhart,* 326 F.3d 376, 380 (3d Cir. 2003) (holding that courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor").

### III.   DISCUSSION

#### A.  ALJ Dunn's Decision

ALJ Dunn reviewed the record and conducted the five-step evaluation process in accordance with 20 C.F.R. §§ 404.1520(a)(4)(DIB), 416.920(a)(4)(SSI).

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since April 19, 2010, the alleged onset date." (R. at 11). At step two, ALJ Dunn determined that Plaintiff has the following severe impairments: fibromyalgia, hypertension, depression, and anxiety orders. (R. at 11). At step three, ALJ Dunn found that the Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404. (R. at 12). Specifically, ALJ Dunn found that Plaintiff's hypertension "is controlled with medication and there is no cardiac

involvement." (R. at 12). With respect to Plaintiff's fibromyalgia, ALJ Dunn noted that the diagnosis is "based primarily on joint and back stiffness and tenderness" and "[t]here are no positive laboratory findings." (R. at 12). Accordingly, she found that the evidence of fibromyalgia was not compatible with the statutory requirements for establishing a disability. (R. at 12). ALJ Dunn further found that Plaintiff's mental impairments, "considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." (R. at 12). In reaching this finding, the ALJ determined that Plaintiff's medical impairments did not result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (R. at 12). Rather, ALJ Dunn determined that Plaintiff has only moderate restrictions in activities of daily living— she lives in a rooming house, handles her personal needs, prepares light chores, and may drive or use public transportation when necessary. (R. at 12). She also determined that Plaintiff only has moderate difficulties in social functioning, and with regard to concentration, persistence, or pace. (R. at 12-13). ALJ Dunn found no episodes of decompensation for an extended duration.

Before moving to step four, ALJ Dunn found that Plaintiff has "the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that she requires a cane for balancing, no climbing ladders/ropes/scaffolds; occasional climbing ramps/stairs; the need for the ability to stretch

for two minutes after one hour of sitting; and she is limited to simple, routine work tasks."[1] (R. at 13). In reaching this conclusion, ALJ Dunn considered Plaintiff's reported impairments, as well as treatment notes and evaluations conducted by various physicians. (R. at 13-14). At step four, ALJ Dunn determined that Plaintiff is unable to perform any past relevant work. (R. at 17). Plaintiff previously worked as a teacher's assistant, a position that exceeds her residual functional capacity. (R. at 17).

Finally, at step five, ALJ Dunn determined that, "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (R. at 17). As a result, ALJ Dunn concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and therefore "[a] finding of 'not disabled' is therefore appropriate." (R. at 18).

Plaintiff disputes the findings of ALJ Dunn on three bases:

(1) The ALJ's residual functional capacity ("RFC") determination is unsupported by substantial evidence because the ALJ erred in evaluating Plaintiff's fibromyalgia,

(2) The ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in considering the required factors when assessing Plaintiff's credibility, and

---

[1] The Court notes that Plaintiff does not currently use an assistive device for walking, and construes ALJ Dunn's decision to mean that Plaintiff's residual functional capacity is such that Plaintiff might require a cane if balancing is involved. (*See* R. at 39 (Plaintiff testified that she does not use a cane at this time)).

(3) The ALJ's Step five determination is unsupported by substantial evidence because the ALJ failed to obtain the testimony of a vocational expert.[2]

(D.E. No. 18, Plaintiff's Memorandum of Law ("Pl. Mov. Br.") at 4). The Court will consider each argument in turn below.

### B. Evaluation of Plaintiff's Fibromyalgia

Plaintiff argues that ALJ Dunn's decision is "erroneous as she failed to properly evaluate Plaintiff's fibromyalgia. (Pl. Mov. Br. at 14). Specifically, Plaintiff argues that the ALJ improperly noted Plaintiff's lack of swelling and "rejected the opinion of Plaintiff's treating physicians, Drs. McNair and Schneiderman . . . ." (*Id.*).

First, Plaintiff argues that ALJ Dunn improperly considered Plaintiff's lack of swelling in evaluating Plaintiff's fibromyalgia. ALJ Dunn noted in her decision that treatment records "do establish tenderness and stiffness over the lower back, neck, knees but there is no evidence of swelling or inflammation." (R. at 14). She also noted that "there was evidence of tender points, but no evidence of edema (swelling)." (R. at 14). Plaintiff argues that these considerations were improper because "swelling, inflammation, and edema are not symptoms of fibromyalgia." (Pl. Mov. Br. at 14-15). In support, Plaintiff points to various diagnostic criteria of fibromyalgia that do not include these symptoms. (*Id.*).

The Court does not find that ALJ Dunn improperly considered Plaintiff's lack of swelling. To start, it appears that ALJ Dunn was merely recapitulating statements made

---

[2] The Court notes that a vocational expert did testify at Plaintiff's hearing. (R. at 52-55). As Plaintiff's brief clarifies, Plaintiff's argument is not that a vocational expert did not testify at all, but rather that the ALJ's reliance on the expert was not proper because "the VE's testimony was in response to an incomplete hypothetical question." (Pl. Mov. Br. at 20).

by Drs. Schneiderman and Schlesinger in their medical reports. (R. at 14). In addition, ALJ Dunn did not rely on Plaintiff's lack of swelling to conclude that Plaintiff's fibromyalgia did not constitute an impairment. To the contrary, ALJ Dunn found that Plaintiff's fibromyalgia *is* a severe impairment. (R. at 11). ALJ Dunn also did not rely on Plaintiff's lack of swelling to determine that Plaintiff has the residual functional capacity to perform some meaningful work—that determination was based on ALJ Dunn's fulsome assessment of Plaintiff's impairments and limitations. In sum, ALJ Dunn's references to Plaintiff's lack of swelling merely reflect statements made by Plaintiff's physicians, and ALJ Dunn did not improperly consider Plaintiff's lack of swelling in reaching her ultimate determination.

Plaintiff also takes issue with ALJ Dunn's statement that "treatment notes indicate complaints of pain but other than occasional tenderness and stiffness there is little in the way of objective evidence." (Pl. Mov. Br. at 16). Plaintiff argues that the ALJ improperly required "objective" evidence of a disease (fibromyalgia) that eludes such evidence. As Plaintiff points out, "as a general matter, 'objective' findings are not required in order to find that an applicant is disabled." *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003).

Again, the Court does not find that ALJ Dunn improperly required "objective evidence" of Plaintiff's fibromyalgia. Though ALJ Dunn noted that there is "little in the way of other objective evidence" (beyond complaints of pain, tenderness and stiffness), she did not use that fact to conclude that Plaintiff lacked a severe impairment or to ultimately conclude that Plaintiff is not disabled. (R. at 14). To the contrary, ALJ Dunn noted and considered the subjective evidence that Plaintiff provided to support her

diagnosis. Specifically, ALJ Dunn noted that Plaintiff "has complained of neck, back, shoulder, knee and other joint pain." (R. at 14). She also noted that Plaintiff's "complaints of chronic pain as well as evidence of tender points led to a diagnosis of fibromyalgia." (R. at 14). Thus, while ALJ Dunn noted a lack of "objective" evidence, there is nothing to indicate that ALJ Dunn considered objective evidence necessary to find that Plaintiff suffers impairments or is disabled. The Court therefore disagrees that the ALJ improperly required objective evidence of Plaintiff's fibromyalgia.

### C. Credibility Determination

Second, Plaintiff asserts that ALJ Dunn erred by failing to consider the required factors when assessing Plaintiff's credibility. (Pl. Mov. Br. at 4). Specifically, Plaintiff reiterates that "objective" indicia may not be available to assess fibromyalgia, and contends that the ALJ should have given more weight to Plaintiff's complaints. She also alleges that the ALJ gave improper weight to Plaintiff's activities of daily living. (Pl. Mov. Br. at 18-20).

The Court finds that ALJ Dunn properly assessed the weight to give Plaintiff's complaints and all other evidence before her, including the opinions or records of multiple treating physicians. As Defendant acknowledges, the ALJ determined that the medical evidence, in its entirety, did not substantiate a level of pain or other symptoms that would preclude all activity. (D.E. No. 19, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.") at 16; R. at 14). This finding is supported by substantial evidence in the record. For example, ALJ Dunn considered the treatment notes of Drs. McNair and Schneiderman that Plaintiff walks without an assistive device. (R. at 24). She considered the various treatment notes indicating that Plaintiff's primary complaints are pain and

tenderness, but that she walks daily for exercise. (R. at 14). She also considered that Dr. Merlin reported that Plaintiff's gait and station were normal; that she had no difficulty getting up or off the examining table, and that her ability to grasp or manipulate items was not impaired. (R. at 14).

Furthermore, while objective evidence of impairment is not required, when a Plaintiff's symptoms suggest a greater restriction than is demonstrated by objective evidence alone, it is proper for the ALJ to consider a Plaintiff's daily activities. *See* C.F.R. §§ 404.1529. In this case, Plaintiff's symptoms suggest greater restriction than is demonstrated by objective evidence because, as Plaintiff points out, objective evidence is often not available in fibromyalgia cases. (*See* Pl. Mov. Br. at 14-17). Thus, it was proper for the ALJ to consider Plaintiff's daily activities, such as meditating, reading, going for walks, performing light chores, and cooking if it does not take a long time. (R. at 14). The Court finds that ALJ Dunn properly weighed this testimony in reaching her conclusion.

### D. Vocational Expert Testimony

Finally, Plaintiff asserts that the ALJ "relied upon the vocational expert's ("VE") testimony to find [Plaintiff] able to perform jobs that exist in significant numbers in the national economy that Plaintiff could perform. . . . However, the VE's testimony was in response to an incomplete hypothetical question, as it was the product of the ALJ's errors in formulating the [Plaintiff's] RFC, and assessing [Plaintiff's] credibility, as discussed above." (Pl. Mov. Br. at 20). Plaintiff relies on *Rutherford v. Barhart*, 399 F.3d 546, 554 (3d Cir. 2005) to support her position that an ALJ may not rely on expert testimony regarding limitations that are "medically supported and otherwise uncontroverted in the

16

record, but that are not included in the hypothetical question posed to the expert." (Pl. Mov. Br. at 21).

However, as *Rutherford* makes clear, the law does "not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford*, 399 F.3d at 554. Instead, the hypothetical posed must "accurately portray" the claimant's impairments and the expert must have an opportunity to evaluate those impairments "as contained in the record." *Id.* (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). As a result, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Id.* (citing *Plummer*, 186 F.3d at 431).

Here, the Court determines that ALJ Dunn accurately conveyed Plaintiff's credibly established limitations to the vocational expert. ALJ Dunn conveyed that "the claimaint can occasionally lift 20 pounds, frequently 10. She can stand or walk six hours a day, sit six hours a day, for pushing and pulling is just within those same weight limitations." (R. at 52). ALJ Dunn further conveyed that, with respect to residual functional capacity, Plaintiff "requires a hand held device for ambulation, that she can comply with simple routine tasks, or can perform simple routine tasks." (R. at 52). In addition, when the vocational expert began to testify that Plaintiff could work as an usher, ALJ Dunn intervened to again clarify that Plaintiff requires a hand held device for ambulation, such as a cane. (R. at 52-53). Based on the credible evidence in the record, this description accurately portrays Plaintiff's limitations. Moreover, Plaintiff admits in her brief that her argument regarding the VE is premised on her argument that ALJ Dunn erred in "formulating the [Plaintiff's] RFC, and assessing [Plaintiff's] credibility, as discussed above." (Pl. Mov. Br. at 20). Yet, as discussed above, the Court found that no such error

17

occurred. As a result, the Court does not determine that ALJ Dunn improperly relied on the testimony of the VE.

## IV. CONCLUSION

The Court has reviewed the entire record and concludes that, for the reasons stated above, the ALJ's decision is supported by substantial evidence. Accordingly, the Court affirms ALJ Dunn's decision and dismisses the case.

*/s Esther Salas*
**Esther Salas, U.S.D.J.**